ACCEPTED
04-15-00074-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/1/2015 10:19:09 AM
KEITH HOTTLE
CLERK

**NO. 04-15-00074-CV**

In the Court of Appeals for the
Fourth District of Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

10/1/2015 10:19:09 AM

KEITH E. HOTTLE
Clerk

**STACEY SCOTT,**

Appellant,

vs.

**LARRY FURROW AND KELLER WILLIAMS LEGACY GROUP,**

Appellees.

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 13-1125-CV-A
Honorable W.C. Kirkendall, Judge Presiding

_____

# BRIEF OF APPELLANT

Frederick D. Junkin
State Bar No. 11058030
*fredjunkin@andrewskurth.com*
Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, Texas 77002
(713) 220-4200
(713) 238-7387 (Facsimile)

ATTORNEY FOR APPELLANT
STACEY SCOTT

September 30, 2015                    **ORAL ARGUMENT REQUESTED**

Appellant Stacey Scott submits the following list of the parties to the trial court's Final Judgment and their counsel.

Plaintiff / Appellant:

> Stacey Scott
>
> Appellate Counsel:[1]
>
>> Frederick D. Junkin
>> Andrews Kurth LLP
>> 600 Travis, Suite 4200
>> Houston, Texas  77002

Defendants / Appellees:

> Larry Furrow
> Keller Williams Legacy Group
>
> Counsel:
>
>> Scott F. Cline
>> Vaughan E. Waters
>> Thornton, Biechlin, Segrato,
>>   Reynolds & Guerra, L.C.
>> 100 N.E. Loop 410, Suite 500
>> San Antonio, Texas  78216-4741

---

[1] Ms. Scott appeared *pro se* in the trial court.

## TABLE OF CONTENTS

Page

LIST OF PARTIES AND COUNSEL ............................................................................... ii

TABLE OF CONTENTS .......................................................................................... iii

REFERENCES TO THE RECORD ................................................................................ v

INDEX OF AUTHORITIES....................................................................................... vi

STATEMENT OF THE CASE ...................................................................................1

ISSUES PRESENTED.............................................................................................2

STATEMENT OF FACTS.........................................................................................3

SUMMARY OF THE ARGUMENT ..............................................................................8

ARGUMENT AND AUTHORITIES ..............................................................................9

I.      Standard of review..............................................................................9

II.     The trial court erred in granting the Claims Motion. ...................................10

        A.      The existence of public records reflecting the state of the
                title to the waterfront lot does not foreclose application of
                the discovery rule to Ms. Scott's claims. ............................................12

                1.      The analysis in the trial court's letter ruling is contrary
                        to well-settled precedent. ........................................................12

                2.      The authorities cited in the trial court's letter ruling
                        did not support the entry of summary judgment.......................15

        B.      The remaining grounds asserted in the Claims Motion
                provide no foundation for affirming the Final Judgment....................16

                1.      Defendants' reference to Ms. Scott's deposition
                        testimony does not support their limitations defense. ..............17

2.   Defendants' reference to Ms. Scott's e-mail to the sellers' counsel does not support their limitations defense..................................................................19

3.   Defendants' reference to Ms. Scott's deposition testimony does not establish an absence of disputed issues of material fact regarding her claims............................21

4.   Defendants' unsupported argument regarding conspiracy and fraud by non-disclosure claims provides no basis for affirmance...............................................22

III.   The trial court erred in granting the Fees Motion. .......................................23

A.   The Defendants were not entitled to pursue an award of attorney's fees under the New Home Contract...................................24

1.   The Defendants were not parties to the agreement...................24

2.   The Defendants were not third-party beneficiaries of the agreement. ...................................................................25

B.   The Final Judgment contains no findings supporting an award of fees under Section 17.50(c) of the Business and Commerce Code. ...............................................................27

CONCLUSION AND PRAYER ................................................................28

CERTIFICATE OF SERVICE................................................................30

CERTIFICATE OF COMPLIANCE .........................................................30

Appendices

1.   Final Judgment

2.   Order Granting Claims Motion

3.   Property Listing for 1104 Peggy Lane

4.   New Home Contract for 1104 Peggy Lane

# REFERENCES TO THE RECORD

| Reference | Record Cited |
|-----------|--------------|
| CR | Clerk's Record filed on March 12, 2015 |
| SCR-I | Supplemental Clerk's Record filed on March 24, 2015 |
| SCR-II | Supplemental Clerk's Record filed on April 29, 2015 |
| 2SCR-I | Second Supplemental Clerk's Record (Vol. 1 of 3) filed on September 21, 2015 |
| 2SCR-II | Second Supplemental Clerk's Record (Vol. 2 of 3) filed on September 21, 2015 |
| 2SCR-III | Second Supplemental Clerk's Record (Vol. 3 of 3) filed on September 21, 2015 |

Page(s)

**Cases**

*Booker v. Real Homes, Inc.*,
103 S.W.3d 487 (Tex. App.–San Antonio 2003, pet. denied)............................10

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ..............................................................................10

*ECC Parkway Joint Venture v. Baldwin*,
765 S.W.2d 504 (Tex. App.–Dallas 1989, writ denied) .....................................14

*Exxon Mobil Chemical Co. v. Ford*,
187 S.W.3d 154 (Tex. App.–Beaumont 2006), *aff'd in part, rev'd
in part*, 235 S.W.3d 615 (Tex. 2007).................................................................15

*Johnson v. Prudential Relocation Management Ltd. P'ship*,
918 S.W.2d 68 (Tex. App.–Eastland 1996, writ denied) ...................................14

*Jones v. Smith*,
649 S.W.2d 29 (Tex. 1983)................................................................................28

*Lesieur v. Fryar*,
325 S.W.3d 242 (Tex. App.–San Antonio 2010, pet. denied)......9, 24, 25, 26, 27

*Lightfoot v. Weissgarber*,
763 S.W.2d 624 (Tex. App.–San Antonio 1989, writ denied) ...........................14

*Marker v. Garcia*,
185 S.W.3d 21 (Tex. App.–San Antonio 2005, no pet.) ....................................28

*Ojeda de Toca v. Wise*,
748 S.W.2d 449 (Tex. 1988) ......................................................8, 12, 13, 14, 16

*Provident Life & Accident Ins. Co. v. Knott*,
128 S.W.3d 211 (Tex. 2003) ..............................................................................10

*Randall's Food Markets, Inc. v. Johnson*,
891 S.W.2d 640 (Tex. 1995) ..............................................................................23

*Rhône–Poulenc, Inc. v. Steel*,
997 S.W.2d 217 (Tex. 1999) ..............................................................................10

*Ryland Group, Inc. v. Hood*,
　924 S.W.2d 120 (Tex. 1996) ...............................................................10

*Salinas v. Gary Pools, Inc.*,
　31 S.W.3d 333 (Tex. App.–San Antonio 2000, no pet.) ....................................14

*Sudan v. Sudan*,
　199 S.W.3d 291 (Tex. 2006) .................................................................9

*Swanson v. Stouffer & Associates, LLP*,
　No. 03-12-00071-CV, 2014 WL 2522145 (Tex. App.–Austin May
　30, 2014, no pet.) ........................................................................15, 16

*Tawes v. Barnes*,
　340 S.W.3d 419 (Tex. 2011) ...............................................................25, 26

*Valence Operating Co. v. Dorsett*,
　164 S.W.3d 656 (Tex. 2005) .................................................................9

## Statutes

Tex. Bus. & Com. Code Ann. § 17.50(c) (West 2011) ........................................27

## Rules

Tex. R. Civ. P. 166a(c) ...................................................................10

## STATEMENT OF THE CASE

**Nature of the Case:** Stacey Scott sued Keller Williams Legacy Group, Larry Furrow, and other parties asserting, among other causes of action, DTPA, fraud, and negligent misrepresentation claims based on pre-purchase representations made to her regarding the waterfront character of a house and associated land in Seguin, Texas. (2SCR-I 14-165.)

**Trial Court Proceedings:** The case was assigned to the 25th Judicial District Court of Guadalupe County. The Honorable W.C. Kirkendall is the presiding judge of that court.

Keller Williams and Furrow filed traditional and no-evidence motions for summary judgment seeking a take-nothing judgment as to each of Ms. Scott's claims. (2SCR-I 177-222.) In a letter ruling, Judge Kirkendall denied the no-evidence motion but granted the traditional motion on the basis of one of the five grounds asserted in the motion — that the discovery rule did not apply to Ms. Scott's claims because the information needed to discover those claims was available in the Guadalupe County real property records when she purchased the property at issue. (CR 536-37.) These rulings were memorialized in an Order that also severed the claims against Keller Williams and Furrow into a separate cause. (CR 534-37.)

Keller Williams and Furrow then filed a second motion for summary judgment seeking recovery on their counterclaim for attorney's fees. (SCR-II 8-37.)

**Trial Court Disposition:** Judge Kirkendall entered a Final Judgment that (i) incorporated his interlocutory Order on the initial summary judgment motion, (ii) ordered that Ms. Scott take nothing on her claims, and (iii) awarded Keller Williams and Furrow $70,179 in attorney's fees through judgment and conditional fees in the event of an appeal. (SCR-II 38-40.)

## ISSUES PRESENTED

### Issue 1

The trial court ruled that Ms. Scott's DTPA, fraud, and negligent misrepresentation claims were barred by limitations based on its conclusion that documents on file in the public records placed her on notice of the "precise nature of her title." However, controlling precedents establish that the existence of such records does not foreclose application of the discovery rule with respect to the types of claims asserted in this proceeding. Did the trial court thus err in holding the discovery rule did not apply and granting summary judgment on the Defendants' limitations defense?

### Issue 2

The trial court's letter ruling reflects that the decision to grant the Defendants' traditional motion for summary judgment was based on only one of five grounds asserted in the motion but stated that the motion "is GRANTED in all things." Did any of the four remaining grounds that were not specifically addressed in the court's letter ruling support its Order granting the motion?

### Issue 3

The Defendants asserted a right to recover attorney's fees pursuant to a clause in a purchase and sale agreement between Ms. Scott and third-party sellers. Neither Keller Williams nor Furrow was a party to that contract. Did the trial court thus err in awarding them recovery of attorney's fees incurred during the trial court proceedings together with a conditional award of fees in the event of an appeal?

### Issue 4

The Defendants also asserted a right to recover attorney's fees pursuant to Section 17.50(c) of the Texas Business and Commerce Code. In order to award fees under that provision, the trial court was required to find that Ms. Scott's DTPA claim "was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment." Since it did not make any such findings, did the trial court err in awarding the Defendants recovery of attorney's fees incurred during the trial court proceedings together with a conditional award of fees in the event of an appeal?

2

This dispute arises out of Ms. Scott's May 2006 purchase of property in Seguin and the Defendants' pre-purchase representations regarding the waterfront character of that property. Of course, certain facts are disputed. As the matter was resolved on summary judgment, the evidence must be viewed in the light most favorable to Ms. Scott, the nonmovant. Viewed in that light, the summary judgment record establishes the following facts relevant to the disposition of this appeal.

**The Purchase of the Property**

Ms. Scott had recently returned to Texas from California and was interested in purchasing a waterfront house to lease as a vacation rental property. (2SCR-II 208-10.) Through an internet search, she identified a listing for a property located at 1104 Peggy Lane in Seguin.[2] (*Id*. 210, 277.) The listing office was Keller Williams Legacy Group. (*Id*. 149.) The listing agent was Larry Furrow. (*Id*.)

The property listing included a photograph depicting a fenced-in property adjoining the Guadalupe River. (*Id*. 149, 177.) Included in the general description of the property was the abbreviation "WTRFR," which is short for "waterfront." (*Id*. 149, 177.) The listing also included a description of the lot: "Lot Des: CRNR, WATER." (*Id*. 149.) Finally, in the description of the property, the listing

---

[2] 1104 Peggy Lane is sometimes referred to in the record as "Lot 2."

3

stated: "Home sits on hill and front faces the Guadalupe River."  (*Id*.)  Based on her review of the listing, Ms. Scott understood that Keller Williams was marketing waterfront property and called Furrow to arrange for an inspection.  (*Id*. 219-20.)

During the inspection, Ms. Scott toured the house at 1104 Peggy Lane.  (*Id*. 219-20, 280-81.)  In addition, Furrow provided her a tour of the fenced waterfront lot depicted in the listing.[3]  (*Id*. 219-20, 280-81.)  The gate providing access to that lot had a lock on it, but Furrow had the combination and opened the gate so that Ms. Scott could enter and inspect the property.  (*Id*. 219-20, 222.)

During the tour, Furrow represented that ownership of the waterfront lot was tied to the ownership of 1104 Peggy Lane.  (*Id*. 222.)  Accordingly, if Ms. Scott purchased the house, then she also would be purchasing an ownership interest in the waterfront lot.  (*Id*. 151, 224.)  Furrow further advised that if she later purchased the vacant lot adjacent to 1104 Peggy Lane, Ms. Scott would have exclusive ownership of the waterfront lot.  (*Id*. 151.)

Based on her inspection of the property and the representations made to her regarding the interest she would acquire in the waterfront lot, Ms. Scott decided to proceed with the purchase of 1104 Peggy Lane.  (*Id*. 151.)  On April 22, 2006, she and the sellers entered into a New Home Contract at an agreed price of $135,000.  (2SCR-I 200-08.)  The sale closed the following month.  (*Id*. 193-96, 209-11.)

---

[3] The waterfront lot is sometimes referred to in the record as "Lot 1."

### Securing the Exclusive Ownership
### and Use of the Waterfront Lot

In 2007, Ms. Scott executed an Unimproved Property Contract with respect to and ultimately purchased for $34,000 the vacant lot adjoining 1104 Peggy Lane.[4] (2SCR-II 4, 151; CR 33-42.) Based on the prior discussions with Furrow, she understood that with that purchase she had secured exclusive ownership of the waterfront lot. (*Id.* 151.) Consistent with that understanding, she placed her own lock on the gate to that property. (*Id.* 229-30.)

### Questions Regarding the Title to the Waterfront Lot

In 2012, Ms. Scott decided to sell all of her interest in 1104 Peggy Lane, the adjoining vacant lot, and the waterfront lot. (2SCR-II 152.) At some point thereafter, a prospective buyer requested information regarding the title to the waterfront lot. (*Id.*) Then, in March of 2013, Ms. Scott communicated with counsel for the individual who had sold her the property in an effort to secure documentation confirming her title to the lot. (*Id.*) In an e-mail dated April 17, 2013, the seller's counsel informed Ms. Scott that "we have checked with our client and there is no documentation, at least recorded that we know, that shows the right to the gated waterfront park." (*Id.*)

---

[4] The vacant lot is sometimes referred to in the record as "Lot 3."

Less than two months later, on May 31, 2013, Ms. Scott filed her Original Verified Petition asserting claims against Keller Williams, Furrow, and several other parties. (CR 4-101.)

Ms. Scott was deposed on January 15, 2014. (2SCR-II 199.) During that deposition, counsel for Keller Williams and Furrow presented to Ms. Scott a plat map depicting the A.J. Grebey Subdivision No. 1. (2SCR-II 261-64.) That plat map and the accompanying dedication indicated that, contrary to what Furrow had represented to Ms. Scott when she was considering purchasing 1104 Peggy Lane, the waterfront lot had been dedicated for use by all of the lot owners in the subdivision. (*Id.*; *see* 2SCR-I 197-98). That information had not been disclosed to Ms. Scott when she purchased the property in 2006. (2SCR-II 154.)

**The Suit**

As noted above, Ms. Scott filed her Original Verified Petition initiating the suit on May 31, 2013. (CR 4.) She subsequently filed her First-Amended Petition, in which she asserted the following claims against Keller Williams and Furrow:

1. Violations of Section 17.46 of the Deceptive Trade Practices-Consumer Protection Act;

2. Fraud and fraud by non-disclosure; and

3. Negligent misrepresentation.

(2SCR-I 14-74.)

6

Keller Williams and Furrow filed traditional and no-evidence motions for summary judgment seeking entry of a take-nothing judgment as to each of these claims (the "Claims Motion"). (2SCR-I 177-222.) Ms. Scott filed a response with controverting evidence. (2SCR-II 1-453.)

After taking the Claims Motion under advisement, the trial court issued a letter announcing its ruling. (CR 536-37.) The court granted the traditional motion on the basis of one of the five grounds the Defendants had asserted. Specifically, the court ruled that the information Ms. Scott needed to discover any claims she may have had against Keller Williams and Furrow was available in the Guadalupe County real property records, that "she is held to have known" that information, and that the discovery rule thus did not toll the running of the applicable limitations periods. (*Id.*) The court denied the no-evidence portion of the motion. (*Id.*) These rulings were later memorialized in a formal Order, which attached the letter ruling as an exhibit and severed the claims against Keller Williams and Furrow into a separate cause. (CR 534-537.)

Keller Williams and Furrow then filed a motion seeking summary judgment on their counterclaim for attorney's fees (the "Fees Motion"). (SCR-II 8-37.) The trial court granted that motion in conjunction with the entry of its Final Judgment. (SCR-II 38-40.) In the Final Judgment, the court (i) incorporated its prior ruling on the Claims Motion, (ii) directed that Ms. Scott take nothing on her claims, and

7

(iii) awarded the Defendants $70,179 in attorney's fees through judgment and conditional fees in the event of an appeal. (*Id.*)

Ms. Scott appealed. (SCR-II 128-33.)

## SUMMARY OF THE ARGUMENT

In its consideration of the Claims Motion and the Fees Motion, the trial court was led astray. Those motions presented arguments that appeared to justify the relief the Defendants sought but ignored controlling precedents that established otherwise.

With respect to the Claims Motion, the ground on which the trial court relied in granting summary judgment asserted that Ms. Scott was on notice of public records establishing the status of the title to the waterfront lot and her claims thus were not subject to the discovery rule. But in a series of decisions beginning with *Ojeda de Toca v. Wise*, 748 S.W.2d 449 (Tex. 1988), Texas courts have established that constructive notice principles do not foreclose application of the discovery rule to DTPA, fraud, and negligent misrepresentation claims. The trial court erred in holding that they do.

The remaining grounds asserted in the Claims Motion were fact-based arguments the trial court did not explicitly rule on. Even if it were appropriate to consider those arguments in this appeal, they did not establish an absence of disputed issues of material fact justifying summary judgment.

8

With respect to the Fees Motion, the Defendants' principal argument was that, as a prevailing party, they were entitled to recover their fees and expenses under Paragraph 17 of the New Home Contract between Ms. Scott and the third-party sellers of 1104 Peggy Lane. However, this Court considered a similar purchase and sale agreement and rejected a similar argument in *Lesieur v. Fryar*, 325 S.W.3d 242 (Tex. App.–San Antonio 2010, pet. denied). The analysis in *Lesieur* establishes that, because they were neither parties to nor third-party beneficiaries of the New Home Contract, Keller Williams and Furrow were not entitled to seek an award of attorney's fees under that agreement. The other ground asserted (but not argued) in the Fees Motion could have supported an award only if the trial court made certain required findings that were not included in the Final Judgment.

The trial court's rulings on the Claims Motion and the Fees Motion should be reversed, and this proceeding should be remanded for trial of Ms. Scott's DTPA, fraud, and negligent misrepresentation claims.

ARGUMENT AND AUTHORITIES

## I.  Standard of review.

An Order granting summary judgment is reviewed *de novo*. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

In connection with a traditional motion for summary judgment, the movant bears the burden of establishing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). In assessing whether there exists a disputed issue of material fact precluding summary judgment, the evidence must be viewed in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

When a defendant moves for summary judgment based on an affirmative defense, the defendant must conclusively prove all elements of that defense. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). To accomplish this, the defendant must present summary judgment evidence that establishes each element of the defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996); *Booker v. Real Homes, Inc.*, 103 S.W.3d 487, 491 (Tex. App.–San Antonio 2003, pet. denied).

## II.     The trial court erred in granting the Claims Motion.

The Claims Motion asserted five grounds for summary judgment on Ms. Scott's DTPA, fraud, and negligent misrepresentation claims. (2SCR-I 182-83.) The trial court's ruling granting the motion was based on the second of these

grounds — that the information Ms. Scott needed to discover any claims she may have had against Keller Williams and Furrow was available in the Guadalupe County real property records, she was deemed to have notice of those records, and the discovery rule thus was not applicable.

In a letter to the parties announcing its decision, the court explained the legal principle on which the ruling was based:

> The only issue raised by defendants' motions for summary judgment is the defense of the statute of limitations. . . .
>
> There appears to be no dispute that suit was filed outside the applicable statutes of limitations for each cause of action. The question before the Court is whether any "discovery rule" or "fraudulent concealment" have tolled the running of the statues [*sic*].
>
> It is clear that the law in Texas is that fraud prevents the running of the statute of limitations until it is discovered or by the exercise of reasonable diligence it might have been discovered. Ruebeck v. Hunt 176 SW2d 738 (Tex. 1943).
>
> However when a person has a right in property, and she claims fraudulent statements are made concerning title to the property, when the public records are open to her, she must exercise reasonable diligence to discover the defect. Exxon Mobil v. Ford, 187 SW3d 154 (Court of Appeals: Beaumont, 2006).
>
> ***Information contained in public records can be ascertained through reasonable diligence and is not inherently undiscoverable. Thus a person must exercise reasonable diligence, and if he could have discovered a defect, she is held to have known it, and limitations will run against her.*** Swanson v. Stouffer & Assocs., 2014 WL 25 22145 (Court of Appeals: Austin, 2014).
>
> Although it is not precisely clear what plaintiff is claiming (either exclusive or non-exclusive access to the waterfront), there is no question the precise nature of her title could have been ascertained

from public record. Since she did not discover the defect, if any, she did not exercise due diligence. Therefore the applicable statutes of limitations are not tolled, and suit on her causes of action is banned.

The defendants' traditional motion for summary judgment is GRANTED in all things.

(CR 536-37 (emphasis added).)

The holding that Ms. Scott had a duty to research the Guadalupe County real property records to investigate whether the Defendants' representations were fraudulent or deceptive is contrary to long-standing precedent.

A. **The existence of public records reflecting the state of the title to the waterfront lot does not foreclose application of the discovery rule to Ms. Scott's claims.**

1. **The analysis in the trial court's letter ruling is contrary to well-settled precedent.**

The trial court's letter makes clear that its ruling granting the Claims Motion was based on its conclusion that Ms. Scott had constructive notice of the state of the title to the waterfront lot and that this constructive notice precluded application of the discovery rule to her claims against Keller Williams and Furrow. The Texas Supreme Court and a number of appellate courts, including this Court, have rejected such reasoning.

In *Ojeda de Toca v. Wise*, the Texas Supreme Court expressly held that constructive notice under Section 13.002 of the Texas Property Code and its predecessor statutes does not constitute a defense to a DTPA claim. 748 S.W.2d 449, 451 (Tex. 1988). The plaintiff in that case had purchased a house that later was

12

demolished by the City of Houston pursuant to an order filed in the Harris County deed records prior to the purchase. *Id*. at 450. The plaintiff sued the seller, alleging DTPA, fraud, and negligence claims. *Id*. Before the Supreme Court, the seller argued that the DTPA and fraud claims were barred because the recording of the demolition order provided the buyer with constructive notice of its existence. *Id*.

In evaluating the seller's defense, the Supreme Court looked to the purposes of recordation statutes such as Section 13.002. It concluded that such statutes were adopted to protect

> "intending purchasers and encumbrancers . . . against the evils of secret grants and secret liens and the subsequent frauds attendant upon them. To that end, it is provided that an innocent purchaser, having no notice of liens or adverse claims not disclosed by the records in the manner prescribed by the statute, *will hold land* as against such claims and liens."

*Id*. at 450-51 (quoting 66 Am. Jur. 2d *Records and Recording Laws* § 48 (1973)).

The Supreme Court rejected the seller's invitation to apply the constructive notice arising out of recordation statutes outside the context of title disputes, noting the absence of any "intent on the part of the legislature to bar DTPA or fraud actions because an examination of county records would have disclosed the seller's deception." *Id*. at 450 With regard to the buyer's DTPA and fraud claims specifically, the Supreme Court stated:

> Title to [the Buyer's] house is not in issue, and we perceive no valid reason to allow [the Seller] to escape damages liability arising out of fraud or conduct proscribed by DTPA § 17.46(b)(23). There are

13

defenses to a deceptive trade practices action, e.g., DTPA § 17.506, but imputed notice under real property recording statutes is not one of them.

   In sum, we hold that recording of the City's demolition order does not relieve [the Seller] from liability to [the Buyer] under her DTPA and fraud theories of recovery.

*Id*. at 451.

This Court has applied this reasoning in two subsequent opinions, reversing trial court judgments that denied recovery based on the defendants' limitations defenses. *See Salinas v. Gary Pools, Inc.*, 31 S.W.3d 333, 336-37 (Tex. App.–San Antonio 2000, no pet.); *Lightfoot v. Weissgarber*, 763 S.W.2d 624, 626-27 (Tex. App.–San Antonio 1989, writ denied).[5] As the Court confirmed in *Salinas*:

   The doctrine of constructive notice has limited application, and when the rationale behind application of the doctrine does not exist, public records will not be held to create an irrebuttable presumption of actual notice.

*Salinas*, 31 S.W.3d at 336-37. Consistent with that analysis, the Court held that "the doctrine of constructive notice of real property records does not operate to constitute notice to plaintiffs bringing DTPA cases which would begin the running of the statute of limitations." *Id*. at 337.

---

   [5] Other courts of appeals also have applied the reasoning in *Ojeda de Toca*. *See, e.g.*, *Johnson v. Prudential Relocation Management Ltd. P'ship*, 918 S.W.2d 68, 69-70 (Tex. App.–Eastland 1996, writ denied) (reversing summary judgment based on defendants' limitations defense with respect to DTPA, negligence, and gross negligence claims); *ECC Parkway Joint Venture v. Baldwin*, 765 S.W.2d 504, 509 (Tex. App.–Dallas 1989, writ denied) (reversing summary judgment based on defendants' limitations defense with respect to DTPA, fraud, negligent misrepresentation, and breach of fiduciary duty claims).

These precedents were neither cited in the Claims Motion nor referenced in the trial court's letter ruling. They thoroughly undermine the holding that the discovery rule is inapplicable to the claims Ms. Scott asserted against Keller Williams and Furrow.

**2.    The authorities cited in the trial court's letter ruling did not support the entry of summary judgment.**

The letter ruling cited two cases — *Exxon Mobil Chemical Co. v. Ford*, 187 S.W.3d 154 (Tex. App.–Beaumont 2006), *aff'd in part, rev'd in part*, 235 S.W.3d 615 (Tex. 2007), and *Swanson v. Stouffer & Associates, LLP*, No. 03-12-00071-CV, 2014 WL 2522145 (Tex. App.–Austin May 30, 2014, no pet.) — as support for the holding that the existence of information in the public records foreclosed application of the discovery rule with respect to Ms. Scott's claims. Neither case stands for that proposition.

Initially, it does not appear that in either case the claimants relied on *Ojeda de Toca* and its progeny in opposing the defendants' summary judgment motions. Certainly, neither opinion cites that line of authority.

In addition, in *Ford*, the issue before the court involved a question of title. The claimant sought to cancel a pipeline easement granted by his predecessor in title on the ground that the easement was defective. *Ford*, 187 S.W.3d at 157. As discussed in *Ojeda de Toca*, the purpose of the recordation statutes is to protect good faith purchasers from the loss or impairment of title due to undisclosed liens

15

or adverse claims. *Ojeda de Toca*, 748 S.W.2d at 450-51. As the issue before the court in *Ford* was an adverse claim regarding the defendant's title to its easement, it was an appropriate circumstance for application of constructive notice principles.

At issue in *Swanson* was whether the claimants had timely asserted negligence and negligent misrepresentation claims against an appraiser who failed to discover and disclose that the septic system for an RV park the claimants had purchased was insufficient and being operated illegally. *Swanson*, 2014 WL 2522145 at \*1. The case thus did not involve a fraudulent misrepresentation or deceptive trade practice of the sort addressed in *Ojeda de Toca*.

Neither *Ford* nor *Swanson* involved the type of claims that Ms. Scott asserted against Keller Williams and Furrow. Because those decisions do not negate the principles announced in *Ojeda de Toca* and applied by this Court in *Salinas* and *Lightfoot,* the trial court erred in holding that the existence of title information in the public records precluded application of the discovery rule to Ms. Scott's claims.

**B.     The remaining grounds asserted in the Claims Motion provide no foundation for affirming the Final Judgment.**

As noted above, the Claims Motion referenced four additional grounds for summary judgment. The first and third grounds asserted two additional limitations arguments. (2SCR-I 182.) The trial did not address these arguments in its letter ruling or in the formal Order memorializing that ruling. (CR 534-37.)

The fourth and fifth grounds were directed toward the merits of Ms. Scott's DTPA, fraud, and negligent misrepresentation claims. (2SCR-I 182-83.) The trial court failed to address these grounds, as well. (CR 534-37.) In fact, the court stated in its letter ruling that "[t]he only issue raised by defendants' motions for summary judgment is the defense of the statute of limitations." (*Id*. 536.) It thus is clear that the court did not base its decision to grant summary judgment on these grounds.

Regardless, the arguments asserted in the remaining grounds did not support entry of summary judgment.

### 1.    Defendants' reference to Ms. Scott's deposition testimony does not support their limitations defense.

As the first ground for summary judgment, the Claims Motion argued that Ms. Scott "was unsure of what her legal interest in the Waterfront Park was at the time of closing" and she thus had a duty to investigate the scope of the rights being acquired. (2SCR-I 182.) In support of this ground, the motion relied on one passage from Ms. Scott's deposition.

In the cited exchange, Ms. Scott makes clear that Furrow:

- "had access to the waterfront access lot and explained that that was a part of 1104 Peggy Lane"; and

- "explained that . . . by purchasing 1104 Peggy Lane, I would be purchasing a legal interest in the waterfront access lot."

17

(*Id.* 218.) Counsel for the Defendants proceeded to question Ms. Scott regarding her understanding as to whether others had access to the waterfront lot, and she stated that as of the closing on 1104 Peggy Lane she didn't know who else may have had access to that property. (*Id.*) However, the reason for this is made clear in another part of the summary judgment record.

In the affidavit submitted in support of her response to the Claims Motion, Ms. Scott stated:

> In 2006, I purchased Lot 2 and what I believed was a one-half interest in Lot 1 (the waterfront/water access lot associated with the property I was purchasing.) At the suggestion of Movant, LARRY FURROW of KELLER WILLIAMS LEGACY GROUP (Sellers' Listing Agent), one year later (in 2007), I purchased Lot 3 (the adjoining vacant lot to Lot 2) directly from Defendants, JUANITA DENN AND D.R. BARR ("Sellers"), so as to acquire exclusive ownership of the waterfront/water access property.

(2SCR-II 151.) The evidence thus suggests Ms. Scott understood that until she purchased the adjoining vacant lot she would share ownership of the waterfront lot and others (who she did not know) would have access to it.

That Ms. Scott believed she ultimately acquired exclusive ownership of the waterfront lot is wholly consistent with testimony later in her deposition: "I thought I owned the property, so I thought I was within my right to cut the locks off and put new locks on." (2SCR-II 230.)

The referenced deposition excerpt fails to establish as a matter of law that Ms. Scott was uncertain regarding the extent of the interest she was acquiring in

the waterfront lot. At most, it establishes the existence of a disputed issue of material fact with respect to that issue.

### 2. Defendants' reference to Ms. Scott's e-mail to the sellers' counsel does not support their limitations defense.

As the third ground for summary judgment, the Claims Motion argued that "Plaintiff's own pleadings acknowledge that she sent an email to Mr. Robert Ritter concerning her legal right to the property more than two years before the date of filing this lawsuit." (2SCR-I 182, 184.) The cited passage addressed a notice of default Ms. Scott had received regarding the vacant lot adjoining 1104 Peggy Lane. As described in the petition, on March 23, 2011, Ms. Scott sent an e-mail responding to the notice that "1) disputed the debt amount; and 2) requested the legal instrument which proved the propert(ies) she purchased were indeed "waterfront" water access properties." (*Id.* 219.)

The referenced e-mail was included as an exhibit to and quoted in the Claims Motion. (2SCR-I 186, 212-14.) Significantly, the motion omitted the last three sentences of the discussion of the title issue. Quoted in full, the relevant passage in the e-mail stated:

> **DISPUTE II**: The property described in my paragraph No. 1 above, was supposed to be purchased with the same water-front access as the property described in my paragraph No. 2 above. However, in reviewing the respective deeds of trust, the language is not the same. Lot 3 in the A.J. Grebey Subdivision is also a part of the A.J. Grebey Subdivision No. 1, a resubdivision of a portion of Elm Grove Camp"; but the Deed of Trust nor the other recorded title documents reflect

19

that from the acquisition. In simple terms, I purchased Lot 3 with all of its water-front privileges as a stand-alone property. According to the recorded title paperwork, those water-front privileges did not carry over to me during the acquisition. **This will have to be rectified immediately. The purchase prices of Lot 2 was commensurate with it being "water-front property"**, with all the same water-front privileges as was spelled out in the deed to LOT 3.

THEREFORE, I will await your corrected title/paperwork, so that we may put this matter to rest.

(2SCR-I 213-14 (shading added).)

The quotation from this e-mail included in the Claims Motion stopped with the sentence immediately preceding the shaded excerpt. (2SCR-1 186.) It thus sought to create an impression that Ms. Scott had doubts regarding the property interest she had acquired and was on notice to investigate her title and any potential claims against Keller Williams and Furrow. (*See id*. 184.) But as the shaded sentences reflect, Ms. Scott had no doubt regarding the interests she had acquired. Rather, she was seeking corrected title documents properly reflecting those interests.

The cited e-mail fails to establish as a matter of law that Ms. Scott was on notice of her potential claims against Defendants. It thus provided no basis for summary judgment on their limitations defense.

**3.** **Defendants' reference to Ms. Scott's deposition testimony does not establish an absence of disputed issues of material fact regarding her claims.**

As the fourth ground for summary judgment, the Claims Motion argued Ms. Scott admitted in her deposition "that she was led to believe by Larry Furrow that her access to the Waterfront Park was shared with her neighbors." (*Id.* 182.) In support of this argument, the motion cited the same deposition excerpt addressed in connection with the first ground above and an additional excerpt in which Ms. Scott identified some similarities between her purchase of 1104 Peggy Lane and her purchase of another property in New Braunfels. (*Id.* 182, 218, 221.)

The first deposition excerpt is fully addressed above. *See supra* II.B.1. For the same reason it fails to establish the Defendants' limitations defense, it fails to establish an absence of deceptive acts, fraud, and negligent misrepresentations by Keller Williams and Furrow.

The second excerpt also fails to establish an absence of disputed issues of material fact. In that excerpt, Ms. Scott stated that the transactions involved similar characteristics — improved tracts with an accompanying interest in waterfront lots. Seizing on her testimony that the New Braunfels waterfront lots were shared with other residents in the neighborhood, the Defendants argue Ms. Scott thereby acknowledged "that Defendant Larry Furrow's advertising of

The Property was accurate; he was selling a lot that had access to a community waterfront area." (2SCR-I 187.) The argument fails for a number of reasons:

- The property listing did not state that 1104 Peggy Lane was being sold with "access to a community waterfront area." The listing described the property with the abbreviation "WTRFR" and described the lot as "CRNR, WATER." (2SCR-II 149.)

- Ms. Scott has never acknowledged that the advertising of the property by Keller Williams and Furrow "was accurate" or that she understood she was merely acquiring "access to a community waterfront area."

- Ms. Scott has indicated that it was represented she would acquire exclusive ownership of the waterfront lot upon purchasing 1104 Peggy Lane and the adjoining vacant lot, and her subsequent actions were consistent with that belief. *See supra* II.B.1.

The deposition excerpt suggests that Ms. Scott believed there were similarities in the two transactions, but it does not establish she believed they were identical in all material respects. Viewed as a whole, the summary judgment record supports a conclusion that, based on the Defendants' representations, Ms. Scott understood she would be able to (and that she ultimately did) acquire exclusive ownership of the waterfront lot. Accordingly, there are disputed issues of material fact precluding summary judgment on her claims against Keller Williams and Furrow.

### 4. Defendants' unsupported argument regarding conspiracy and fraud by non-disclosure claims provides no basis for affirmance.

The Defendants' final ground for summary judgment asserted that "Plaintiff has failed to provide adequate evidence in support of her claims of conspiracy and

fraud by non-disclosure." (2SCR-I 183.) The Claims Motion referenced the First-Amended Petition as support for this assertion but did not include any other argument or evidence.

This ground misstates the burden in the context of a traditional motion for summary judgment. Keller Williams and Furrow bore the burden of coming forward with evidence negating at least one essential element of Ms. Scott's claims. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Ms. Scott was not obligated in her petition to present evidence proving up those claims. The Defendants' fifth ground presented nothing for consideration.

## III. The trial court erred in granting the Fees Motion.

The Fees Motion asserted two grounds for recovery of attorney's fees and costs. (SCR-II 10.) First, it argued that Paragraph 17 of the New Home Contract entitled Defendants to recover their fees and expenses as a prevailing party in the litigation. Second, it asserted that an award of fees and expenses was appropriate under Section 17.50(c) of the Texas Business and Commerce Code.

In its Final Judgment, the trial court granted the Fees Motion and awarded the Defendants $70,179 in attorney's fees through judgment and conditional fees in the event of an appeal. (SCR-II 39.) As discussed below, that award is not supported by either ground for recovery asserted in the Fees Motion.

**A.** **The Defendants were not entitled to pursue an award of attorney's fees under the New Home Contract.**

Paragraph 17 of the New Home Contract provided:

ATTORNEY'S FEES: The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party.

(SCR-II 22.)

Generally, in order to enforce rights under a contract, a claimant must be either a party to the contract or a third-party beneficiary of it. *Lesieur v. Fryar*, 325 S.W.3d 242, 251 (Tex. App.–San Antonio 2010, pet. denied). Because Keller Williams and Furrow were neither parties to nor third-party beneficiaries of the New Home Contract, they were not entitled to rely on or enforce the attorney's fees provision.

**1.** **The Defendants were not parties to the agreement.**

The first paragraph on the first page of the New Home Contract provided:

PARTIES: __D.R. Barr   Juanita Denn__ (Seller) agrees to sell and convey to __Stacey Jo Scott__ (Buyer) and Buyer agrees to buy from Seller the Property described below.

(SCR-II 17.) Paragraph 8 further provided:

BROKER'S FEES: All obligations of the parties for payment of broker's fees are contained in *separate written agreements*.

(*Id.* 20 (emphasis added).)

The clear purpose of Paragraph 1 was to identify the parties to the contract, and neither Keller Williams nor Furrow was identified as a party. In addition,

Paragraph 8 established that the relationships, if any, between the sellers and any broker and between Ms. Scott and any broker were to be memorialized in *other* agreements. Based on the plain language of these provisions, it is clear that Keller Williams and Furrow were not parties to the New Home Contract.[6]

This conclusion is supported by this Court's holding in *Lesieur v. Fryar*, in which the Court construed a similar purchase and sale agreement with identical Parties and Attorney's Fees provisions. *See Lesieur*, 325 S.W.3d at 251-52. In that case, the Court held that Paragraph 1 of that agreement "was a definitional rather than merely a descriptive provision" and established the seller and buyer as the only parties to the agreement. *Id.* at 252.

### 2. The Defendants were not third-party beneficiaries of the agreement.

Texas precedents establish that there is a presumption against conferring third-party beneficiary status on non-contracting parties. *See Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *Lesieur*, 325 S.W.3d at 252. Any doubts must be resolved against the existence of a third-party beneficiary. *Lesieur*, 325 S.W.3d at

---

[6] This is consistent with the following affirmative defense included in the Defendants' Third Amended Answer:

> Defendants deny the existence of a written contract or written warranties, express or implied, between themselves and the Plaintiff and/or plead that such instruments are without consideration or that the consideration of the same has failed in whole or in part.

(2SCR-I 170.)

252. Thus, "in the absence of a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party, courts will not confer third-party beneficiary status by implication." *Tawes*, 340 S.W.3d at 425.

There are two types of third-party beneficiaries who may enforce a contract. A "donee beneficiary" is one who, when the contract is performed, will receive the benefit of that performance as a pure donation. *Lesieur*, 325 S.W.3d at 252. A "creditor beneficiary" is one who receives the benefit of the contractual performance in satisfaction of a legal duty owed to the beneficiary. *Id*. However, benefits that are an indirect or incidental result of the performance of a contract are not sufficient to confer third-party beneficiary status on a non-contracting party. *Tawes*, 340 S.W.3d at 425; *Lesieur*, 325 S.W.3d at 252.

The intended beneficiaries of the New Home Contract were the sellers, who would be paid the sale price, and Ms. Scott, who would receive title to the property. Nothing in the contract suggests an intent to confer a direct benefit on Keller Williams or Furrow as a donee or creditor. In fact, the language of Paragraph 8 made clear that any benefits they were to receive as brokers were governed by "separate written agreements." (SCR-II 20.)

Consistent with the Court's conclusion in *Lesieur*, the parties to the New Home Contract did not contract with the intent to directly benefit the realtors involved in their transaction. *See Lesieur*, 325 S.W.3d at 253. Any benefit Keller

Williams and Furrow received as a result of the performance of that contract was merely incidental and insufficient to confer third-party beneficiary status. *See id*.

Keller Williams and Furrow had no contractual right to rely on or enforce Paragraph 17 of the New Home Contract. *See id*. To the extent the trial court based its award of fees on that provision, it erred.

**B.    The Final Judgment contains no findings supporting an award of fees under Section 17.50(c) of the Business and Commerce Code.**

As a second ground for their Fees Motion, Defendants asserted that Ms. Scott's DTPA claim was "groundless in law and fact, and brought in bad faith for the purpose of harassment," entitling them to an award of attorney's fees under Section 17.50(c) of the Business and Commerce Code. (SCR-II at 10.) That section provides:

> On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

Tex. Bus. & Com. Code Ann. § 17.50(c) (West 2011).

The statute specifically requires that an award of fees be supported by an affirmative finding by the trial court that the plaintiff's claim was groundless or brought in bad faith or for the purpose of harassment. Texas courts have consistently reversed awards of attorney's fees under Section 17.50(c) in the

absence of such findings. *E.g.*, *Jones v. Smith*, 649 S.W.2d 29, 29-30 (Tex. 1983); *Marker v. Garcia*, 185 S.W.3d 21, 30 (Tex. App.–San Antonio 2005, no pet.).

The trial court's ruling on the Fees Motion was set forth in the Final Judgment, which did not include any findings that would justify an award of fees and costs under Section 17.50(c). (SCR-II 38-40.) Accordingly, that provision does not support the judgment awarding the Defendants their attorney's fees and costs.

## CONCLUSION AND PRAYER

Ms. Scott purchased 1104 Peggy Lane and the adjoining vacant lot because Keller Williams and Furrow represented that ownership of those properties carried with it ownership of the waterfront lot. But in their Claims Motion and Fees Motion, Keller Williams and Furrow argued that Ms. Scott should have known better, that she should be denied any opportunity to pursue recovery of the damages resulting from their deceptive acts, and that *she* should pay *their* attorney's fees and costs. The motions, however, failed to acknowledge the controlling precedents that undermined the legal contentions asserted in support of these arguments and on which the trial court erroneously relied.

The trial court's Final Judgment allows Keller Williams and Furrow to evade responsibility for their conduct, leaving Ms. Scott to bear the financial impacts of

their deceptive acts and fraudulent representations. The applicable statutes and precedents do not support such an unjust result.

Accordingly, Ms. Scott respectfully prays that this Court (i) reverse the trial court's Final Judgment in all respects, (ii) remand this cause for further proceedings, and (iii) grant her such other and further relief to which she may be justly entitled.

Respectfully submitted,

By: /s/ Frederick D. Junkin
    Frederick D. Junkin
    State Bar No. 11058030
    *fredjunkin@andrewskurth.com*
    Andrews Kurth LLP
    600 Travis, Suite 4200
    Houston, Texas 77002
    (713) 220-4200
    (713) 220-4285 (fax)

ATTORNEYS FOR APPELLANT
STACEY SCOTT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellant Stacey Scott was forwarded to all counsel of record by electronic service on this 30th day of September, 2015.

/s/ Frederick D. Junkin
Frederick D. Junkin

## SERVICE LIST

Scott F. Cline
Vaughan E. Waters
Thornton, Biechlin, Segrato,
 Reynolds & Guerra, L.C.
100 N.E. Loop 410, Suite 500
San Antonio, Texas  78216-4741

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the undersigned certifies that this brief complies with the word limits of Rule 9.4(i)(2)(B) because, exclusive the parts of the brief exempted by Rule 9.4(i)(1), it contains 6,325 words.

/s/ Frederick D. Junkin
Frederick D. Junkin

Attorney for Appellant
Stacey Scott

Dated:  September 30, 2015

# Appendix 1

# Final Judgment
### (SCR-II 38-40)

CAUSE NO. 13-1125-CV-A

| STACEY SCOTT | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | GUADALUPE COUNTY, TEXAS |
| | § | |
| LARRY FURROW AND KELLER | § | |
| WILLIAMS LEGACY GROUP | § | |
| | § | |
| Defendants. | § | 25TH JUDICIAL DISTRICT |

FILED
10·29a·M
FEB 2 4 2015
DEBRA CROW
Clerk District Court Guadalupe Co. Tx.

ENTERED

## FINAL JUDGMENT

On this day came to be heard the above styled and numbered cause. All parties appeared by and through their respective counsel and announced "ready." The Court proceeded to take up this matter for consideration in its due order on the docket.

The Court finds that it previously granted summary judgment in favor of Defendants herein, LARRY FURROW and KELLER WILLIAMS LEGACY GROUP, by order dated November 14, 2014, in Cause Number 2013-1125-CV, in the 25th Judicial District Court of Guadalupe County, Texas (the "Main Cause"), ordering that Plaintiff take nothing against the Defendants on all of the Plaintiff's claims; the Court further ordered that Plaintiff's claims against Defendants be severed into a separate cause—assigned as Cause Number 2013-1125-CV-A, in the 25th Judicial District Court of Guadalupe County, Texas (the "Severed Cause").

The Court further finds that the only remaining issues pending before this Court in this, the Severed Cause is the counterclaim by Defendants against Plaintiff seeking recovery of attorneys' fees and costs in favor of Defendants and against Plaintiff.

After examining all of the pleadings on file in this case, reviewing Defendants' Traditional Motion for Summary Judgment on Defendants' Counter-Claim for Attorney's Fees

Page 1 of 3

and the proper summary judgment evidence attached therein and any responses filed thereto, and hearing and considering the arguments and authorities presented by counsel, finds that Defendants' Traditional Motion for Summary Judgment on Defendants' Counter-Claim for Attorney's Fees is well-founded and should be in all things GRANTED.

It is, therefore, ORDERED, ADJUDGED, and DECREED as follows:

1.     The Court hereby incorporates the Summary Judgment entered by this Court in favor of Defendants LARRY FURROW and KELLER WILLIAMS LEGACY GROUP, by order dated November 14, 2014, originally in the Main Cause and ORDERS that Plaintiff Stacey Scott take nothing on all of her claims against Defendants LARRY FURROW and KELLER WILLIAMS LEGACY GROUP.

2.     The Court Further Orders that Defendants LARRY FURROW and KELLER WILLIAMS LEGACY GROUP do have and recover from the Plaintiff Stacey Scott, the following sums as reasonable and necessary attorney's fees:

A. Through the trial of the Plaintiff's claims in the Main Cause and the Severed Cause attorney's fees:     $ 70,179.00

B. In the event appeal is perfected to the Fourth Court of Appeals, the additional sum of:     ~~$ 20,000.00~~ $10,000

C. In the event of submission of and/or a response to a petition for review to the Texas Supreme Court the additional sum of:     ~~$ 10,000.00~~ $5,000

D. In the event the Texas Supreme Court grants the petition for review or orders full briefing, the additional sum of:     ~~$ 20,000.00~~ $10,000

In addition to the foregoing, all costs herein incurred are hereby adjudged against Plaintiff Stacey Scott.

It is the intention of this Court that this Judgment be a full, final, and appealable judgment disposing of all of the parties and all of the relief which is addressed in this, the Severed Cause. It is, therefore, further ORDERED, ADJUDGED, and DECREED that any relief sought in this Severed Cause and not otherwise addressed in this Judgment, is hereby, and in all things DENIED.

SIGNED this _____ day of _____, 2015.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM:**

THORNTON, BIECHLIN, SEGRATO
   REYNOLDS & GUERRA, L.C.
Fifth Floor - One International Centre
100 NE Loop 410
San Antonio, Texas 78216
(210) 342-5555
(210) 525-0666 FAX

BY: _____
      Scott F. Cline
      State Bar No. 04394500
      **ATTORNEYS FOR DEFENDANTS**
      **LARRY FURROW and**
      **KELLER WILLIAMS LEGACY GROUP**

_____
Stacey Scott, Pro Se
634 Ashmore Ave.
New Braunfels, Texas 78130

## Appendix 2

# Order Granting Claims Motion
(CR 534-37)





Cause No. 13-1125-CV

| | | |
|---|---|---|
| STACEY SCOTT | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 25TH JUDICIAL DISTRICT |
| | § | |
| JUANITA DENN, D.R. BARR, LARRY | § | |
| FURROW, KELLER WILLIAMS LEGACY | § | |
| GROUP, PATRICK DENN, ROBERT | § | |
| RITTER, and CAROL MATHEWS | § | GUADALUPE COUNTY, TEXAS |

### ORDER ON DEFENDANT KELLER WILLIAMS LEGACY GROUP MOTION FOR TRADITIONAL AND NO-EVDENCE SUMMARY JUDGMENT

Having considered the motions, responses, and oral arguments of both Plaintiff and Defendants' counsel, this Court rules on Defendants Larry Furrow and Keller Williams Legacy Group's Motion for Traditional and No-Evidence Summary Judgment and all objections to Summary Judgment Evidence as follows:

Defendants' objections to Plaintiff's expert broker opinions and Plaintiff's supplemental support affidavit are sustained.

Plaintiff's objections to the use of her First Amended Petition are overruled.

Defendants' Traditional Motion for Summary Judgment is Granted in all things.

Defendants' No-Evidence Motion for Summary Judgment is Denied.

This court orders that by granting Defendant's Traditional Motion for Summary Judgment all causes of action brought by Plaintiff against Larry Furrow and/or Keller Williams Legacy Group are severed and shall now be referenced as cause no. _____.

*Letter Ruling on this matter dated November 3, 2014 attached as Exhibit A.*

Signed this the ___13th___ day of ___November___, 2014.

_____
JUDGE PRESIDING

ORDER ON DEFENDANTS LARRY FURROW AND KELLER WILLIAMS          Page 1 of 2
LEGACY GROUP'S TRADITIONAL AND NO-EVIDENCE MOTION
FOR SUMMARY JUDGMENT.

**APPROVED AS TO FORM:**

---

Scott F. Cline
Jack W Hawthorne III
100 N.E. Loop 410, Fifth Floor
San Antonio, Texas 78216

---

Stacey Scott
634 Ashmore Ave.
New Braunfels, Texas 78130

ORDER ON DEFENDANTS LARRY FURROW AND KELLER WILLIAMS
LEGACY GROUP'S TRADITIONAL AND NO-EVIDENCE MOTION
FOR SUMMARY JUDGMENT.

Page 2 of 2

Page 535

JUDY CADDELL
COURT ADMINISTRATOR / COORDINATOR

PHYLLIS BUSH
OFFICIAL COURT REPORTER



*W.C. Kirkendall*
*2nd 25th Judicial*
*District Judge*
COLORADO, GONZALES, GUADALUPE & LAVACA COUNTIES

November 3, 2014

Stacey Scott
*Pro Se*
staceyscott549@msn.com

Scott F. Cline
*Thornton, Biechlin, Segrato,*
*Reynolds & Guerra, L.C.*
(713) 355-9689

Re:   No. 13-1125-CV; Stacey Scott v. Juanita Denn, et al; In the District Court; Guadalupe
      County, Texas

Counsel,

I have reviewed the traditional and no evidence motions for summary judgment filed by
defendants Furrow and Keller Williams, the plaintiff's response and all exhibits. The following
is the ruling of the Court.

Defendants' objections to plaintiff's expert broker opinions and plaintiff's supplemental
supportive affidavit are SUSTAINED. Neither affidavit is pertinent to the issues before the Court
in this motion.

The plaintiff's objections to the use of her 1st amended petition is OVERRULED. She also
objected to any documents not complying with TRE 802, 803, 804 or 901. She did not however
specify to what documents, if any, she was objecting. Her objections, if any, are waived.

The only issue raised by defendants' motions for summary judgment is the defense of the statute
of limitations. Plaintiff does not deny that suit was filed outside the applicable limitations but
asserts the filing is not banned because the "discovery rule" and because of "fraudulent
concealment". No authority was cited for either proposition by plaintiff, but she does cite some
summary judgment evidence.

There appears to be no dispute that suit was filed outside the applicable statutes of limitation for
each cause of action. The question before the Court is whether any "discovery rule" or
"fraudulent concealment" have tolled the running of the statues.

It is clear that the law in Texas is that fraud prevents the running of the statute of limitations until
it is discovered or by the exercise of reasonable diligence it might have been discovered.
Ruebeck v. Hunt 176 SW2d 738 (Tex. 1943).



However when a person has a right in property, and she claims fraudulent statements are made concerning title to the property, when the public records are open to her, she must exercise reasonable diligence to discover the defect. Exxon Mobil v. Ford, 187 SW3d 154 (Court of Appeals: Beaumont, 2006).

Information contained in public records can be ascertained through reasonable diligence and is not inherently undiscoverable. Thus a person must exercise reasonable diligence, and if he could have discovered a defect, she is held to have known it, and limitations will run against her. Swanson v. Stouffer & Assocs., 2014 WL 25 22145 (Court of Appeals: Austin, 2014).

Although it is not precisely clear what plaintiff is claiming (either exclusive or non-exclusive access to the waterfront), there is no question the precise nature of her title could have been ascertained from public record. Since she did not discover the defect, if any, she did not exercise due diligence. Therefore the applicable statutes of limitations are not tolled, and suit on her causes of action is banned.

The defendants' traditional motion for summary judgment is GRANTED in all things.

A no-evidence motion for summary judgment is inapposite for an issue on which the movant has the burden of proof. Therefore defendants' no-evidence motion for summary judgment is DENIED.

I request that Mr. Cline prepare an order reflecting this ruling and forward it me for entry, with a copy to the other parties. Any objections to the form of the order must be received within one week of my receipt of Mr. Cline's proposed order.

Sincerely,

W.C. Kirkendall

cc:   Donald Jamela
      Robert McNiel
      Robert Ritter

# Appendix 3

# Property Listing for
# 1104 Peggy Lane
### (2SCR-II 149)

## Agent Report

542652

Addr: **1104 Peggy Ln**  *Virtual Tour Link:*
Status: **New**  Class: **Single Residential**
Area: **2700**  Grid: **492C8**  LP: $ **$135,000**
Int.St./Dir: **Hwy 46 to Elm Grove to Pecan Pt to Schley to Peggy Lane**
Subdivision: **Not in defined subdivision**  Type: **Single Family D...**

| | | | |
|---|---|---|---|
| City: **Seguin** | Zip: **78155** | AdSf: | |
| County: **Guadalupe** | CAN#: **00000000000000** | | |
| Lot: **2** | Block: **0** | CB/NCB: **0** | |
| Legal: **Part of lot 2, AJ Grebey Subd** | | | |
| Lot SizeDist: **.124** | BR: **2** | Apx Age: **0** | |
| Sch **Navarro Isd** | FBaths: **2** | HBaths: **0** | |
| Elem: **Navarro Elementary** | Builder: **D R Barr** | | |
| Middle: **Navarro** | Constr: **New** | # Garage Sp: **2** | |
| High: **Navarro High** | Sale/Rent: **For Sale** | Mo Lease: | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| LR 14 | X 26 | MB 14 | X 12 | Utility Suppliers: | Assessments: | | |
| DR 0 | X 0 | MBth 8 | X 12 | Gas: | HOA Name: | | |
| FR 0 | X 0 | 2B 12 | X 9 | Electric: | HOA Fee: | Assoc Tran Fee: | |
| KT 13 | X 10 | 3B 0 | X 0 | Garbage: | Frequency: | Assoc Tran Fee2: | |
| BK 0 | X 0 | 4B 0 | X 0 | Water: | Mand: **No**  Mult HOA: | Assoc Tran Fee3: | |
| UR 7 | X 4 | 5B 0 | X 0 | Sewer: | HOA Name2: | | |
| EN 0 | X 0 | 0 0 | X 0 | Other: | HOA Name3: | | |
| SO 0 | X 0 | 0 0 | X 0 | | WTRFR | | |

| | | |
|---|---|---|
| County: **0.00** | Taxed by Mltpl Counties: **No** | |
| City: **0.00** | | Subdivision: **Not in defined subdivision** |
| School: **0.00** | Financials: | Preferred Title Co.: **Seguin Title** |
| Other: **0.00** | PrTerms: **1ST** | |
| Total: **0.00** | Loan Info: **NA** | |

| | | | |
|---|---|---|---|
| Owner: **See Broker** | SC/$: **0** | BC/$: **3** | Owner LREA/LREB: **No** |
| List Agent: **LARRY FURROW** | (210) 287-0270 | Occupancy: **VACNT** | |
| List Office: **Legacy Group Keller Williams** | KLWMOO...(210) 482-3200 | Poss: **CLSFD** | |
| Ph to Show: **210-222-2227** | Showing Contact: **CSS** | | Bonus: |

AgentRmrks:

Remarks: **Perfect week-end get away place. New home with all the bells and whistles of a larger home. Home sits on hill and front faces the Guadalupe River. Large living area with 2 master suites, rear entry 2 car garage. Best thing about this place is the owner is willing to carry the paper with very good terms. Don't wait this place will not last long.**

| | | |
|---|---|---|
| Style: **1STRY** | Parking: **REAR** | |
| Ext: **CMTFB** | Roof: **METAL** | Mst BR: **WLKIN, CLFAN** |
| Fndtn: **SLAB** | Wdw: **NONE** | Mst Bth: **TSCMB, DBLVN** |
| Interior: **1LVAR, LDCMB, UTINS, HGHCL** | | |
| Inclusions: **CLFNS, WSHCN, DRYCN, MCOVN, STVRN, DISPL, DSHWR, ICMKR, SMKAL, ELWTR, GARDR** | | |
| Exterior Fea: **PVFNC, DBLPN, TREES** | | |
| Wat/Swr: **WTRSY, SPTIC** | Floor: **CRPT, CTILE** | Frpl: **ONE, FAMRM** |
| Heating: **CNTRL** | Pool/Spa: **NONE** | Lot Impv: |
| Ht Fuel: **ELEC** | Lot Des: **CRNR, WATER** | Misc: **NONE** |
| Air Cond: **1CNTR** | Access: | |

| | | |
|---|---|---|
| Contingent Info: | DOM: **0** | Sold Price: |
| Contract Date: | Sale Trms: | SQFT/Acre: |
| Closing Date: | Sell Concess: | Price per SQFT: |
| Sell Ofc: | Selling Agent: | Source SQFT Acre: |

All measurements, taxes, age, financial & school data are approximate and provided by other sources. Buyer should independently verify same before relying thereon.
***Copyright 2005 by SAN ANTONIO BOARD OF REALTORS***

Prepared By:
LARRY FURROW - (210) 287-0270
lfr@swbell.net

Exhibit **A-2**


Appendix 4

# New Home Contract
# for 1104 Peggy Lane
(2SCR-I 200-08)

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)     02-13-06
# NEW HOME CONTRACT
(Completed Construction)
NOTICE: Not For Use For Condominium Transactions or Closings Prior to Completion of Construction

1. **PARTIES:** ___D R Barr___ , ___Juanita Denn___ (Seller) agrees to sell and convey to ___Stacey Jo Scott___
   _____ (Buyer) and Buyer agrees to buy from Seller the Property described below.

2. **PROPERTY:** Lot ___2___ , Block _____ , ___AJ Grebey Subdivision No.1___ Addition, City of ___Seguin___ , County of ___Guadalupe___ , Texas, known as ___1104 Peggy Lane___ ___78155___ (address/zip code), or as described on attached exhibit, together with: (i) improvements, fixtures and all other property located thereon; and (ii) all rights, privileges and appurtenances thereto, including but not limited to: permits, easements, and cooperative and association memberships. All property sold by this contract is called the "Property".

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ............................................ $ ___3,500.00___
   B. Sum of all financing described below (excluding any loan funding fee
      or mortgage insurance premium) ..................................................................... $ ___131,500.00___
   C. Sales Price (Sum of A and B) ........................................................................ $ ___135,000.00___

4. **FINANCING:** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
   ☐ A. **THIRD PARTY FINANCING:** One or more third party mortgage loans in the total amount of
      $ _____ (excluding any loan funding fee or mortgage insurance premium).
      (1) Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s), this contract will terminate and the earnest money will be refunded to Buyer.
      (2) Financing Approval: (Check one box only)
         ☐ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Condition Addendum.
         ☐ (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
   ☐ B. **ASSUMPTION:** The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
   ☒ C. **SELLER FINANCING:** A promissory note from Buyer to Seller of $ ___131,500.00___ , secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

5. **EARNEST MONEY:** Upon execution of this contract by both parties, Buyer shall deposit $ ___1,000.00___ as earnest money with ___Alamo Title Co Francis Hardtenstein___ , as escrow agent, at ___109 North River   Seguin, Texas 78155___ (address). Buyer shall deposit additional earnest money of $ ___n/a___ with escrow agent within _____ days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

6. **TITLE POLICY AND SURVEY:**
   A. TITLE POLICY: Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by ___Alamo Title Co___
      _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
      (1) Restrictive covenants common to the platted subdivision in which the Property is located.
      (2) The standard printed exception for standby fees, taxes and assessments.
      (3) Liens created as part of the financing described in Paragraph 4.
      (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
      (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
      (6) The standard printed exception as to marital rights.
      (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
      (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements. Buyer, at Buyer's expense, may have the exception amended to read, "shortages in area".
   B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive

Initialed for Identification by Buyer _____ and Seller _____     TREC NO. 24-6
(TAR-1604) 2-13-06     Page 1 of 9
Legacy Group Keller Williams 12500 San Pedro, Suite 140 San Antonio, TX 78216     Phone:(210) 482-3200   Fax: (210) 492-4669     D R Barr
Larry Farrow     Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com


DEFENDANT'S EXHIBIT
MSD-4

KW-000021

covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or the Closing Date, whichever is earlier.

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and any lender. (Check one box only)

☒ (1) Within _____ 10 _____ days after the effective date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (Affidavit). If the existing survey or Affidavit is not acceptable to Title Company or Buyer's lender, Buyer shall obtain a new survey at ☒ Seller's ☐ Buyer's expense no later than 3 days prior to Closing Date. If Seller fails to furnish the existing survey or Affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.

☐ (2) Within _____ days after the effective date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

☐ (3) Within _____ days after the effective date of this contract, Seller, at Seller's expense, shall furnish a new survey to Buyer.

D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title; disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (8) above; or which prohibit the following use or activity: _____

Buyer must object not later than (i) the Closing Date or (ii) _____ days after Buyer receives the Commitment, Exception Documents, and the survey, whichever is earlier. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MANDATORY OWNERS' ASSOCIATION MEMBERSHIP: The Property ☐ is ☒ is not subject to mandatory membership in an owners' association. If the Property is subject to mandatory membership in an owners' association, Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community in which the Property is located, you are obligated to be a member of the owners' association. Restrictive covenants governing the use and occupancy of the Property and a dedicatory instrument governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. You are obligated to pay assessments to the owners' association. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of the Property. If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in an Owner's Association should be used.

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

KW-000022

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

7. **PROPERTY CONDITION:**
   A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller shall pay for turning on existing utilities for inspections.
   B. ACCEPTANCE OF PROPERTY CONDITION: Buyer accepts the Property in its present condition; provided Seller, at Seller's expense, shall complete the following specific repairs and treatments; and make the following improvements: _____
   C. WARRANTIES: Except as expressly set forth in this contract, a separate writing, or provided by law, Seller makes no other express warranties. Seller shall assign to Buyer at closing all assignable manufacturer warranties.
   D. INSULATION: As required by Federal Trade Commission Regulations, the information relating to the insulation installed or to be installed in the improvements at the Property is: (check only one box below)
      ☐ (1) as shown in the attached specifications.
      ☒ (2) as follows:
         a) Exterior walls of improved living areas: insulated with _____ Rolled _____ insulation to a thickness of ____4____ inches which yields an R-Value of _____ R-13 _____ .
         b) Walls in other areas of the home: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____ .
         c) Ceilings in improved living areas: insulated with _____ Blown _____ insulation to a thickness of ___12___ inches which yields an R-Value of _____ R-32 _____ .
         d) Floors of improved living areas not applied to a slab foundation: insulated with insulation to a thickness of _____ inches which yields an R-Value of _____ .
         e) Other insulated areas: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____ .
      All stated R-Values are based on information provided by the manufacturer of the insulation.
   E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.
   F. COMPLETION OF REPAIRS, TREATMENTS, AND IMPROVEMENTS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs, treatments, and improvements (Work) prior to the Closing Date. All required permits must be obtained, and Work must be performed by persons who are licensed or otherwise authorized by law to provide such Work. At Buyer's election, any transferable warranties received by Seller with respect to the Work will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed Work prior to the Closing Date, Buyer may do so and receive reimbursement from Seller at closing. The Closing Date will be extended up to 15 days, if necessary, to complete Work.

Initialed for Identification by Buyer _____ and Seller _____          TREC NO. 24-6
(TAR-1604) 2-13-06                                                        Page 3 of 9
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035  www.ziplorm.com                D R Barr

KW-000023

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. SELLER'S DISCLOSURE: Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
(1) any flooding of the Property which has had a material adverse effect on the use of the Property;
(2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
(3) any environmental hazards or conditions materially affecting the Property;
(4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
(5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
(6) any threatened or endangered species or their habitat affecting the Property.

I. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ n/a . Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.

8. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. CLOSING:
A. The closing of the sale will be on or before May 22 , 2006 , or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy.
C. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.
D. All covenants, representations and warranties in this contract survive closing.

10. POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.

11. SPECIAL PROVISIONS: (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

Initialed for Identification by Buyer _____ and Seller _____    TREC NO. 24-6
(TAR-1604) 2-13-06                                                  Page 4 of 9
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com    D R Barr

KW-000024

**12. SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:

(1) Expenses payable by Seller (Seller's Expenses):

(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

(b) Seller shall also pay an amount not to exceed $ n/a _____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Housing Assistance Program or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

(2) Expenses payable by Buyer (Buyer's Expenses):

(a) Loan origination, discount, buy-down, and commitment fees (Loan Fees).

(b) Appraisal fees; loan application fees; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; mortgagee title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; and other expenses payable by Buyer under this contract.

B. Buyer shall pay Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender.

C. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Housing Assistance Program or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**

A. PRORATIONS: Taxes for the current year, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer will be obligated to pay taxes for the current year.

B. ROLLBACK TAXES: If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property results in additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If, due to factors beyond Seller's control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may (a) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (b) terminate this contract as the sole remedy and receive the earnest money. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Subject to applicable law, any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion ☒ will ☐ will not be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

Initialed for Identification by Buyer _____ and Seller _____

(TAR-1604) 2-13-06

TREC NO. 24-6
Page 5 of 9

KW-000025

**17. ATTORNEY'S FEES:** The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party.

**18. ESCROW:**
  A. **ESCROW:** The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.
  B. **EXPENSES:** At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties.
  C. **DEMAND:** Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.
  D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages of three times the amount of the earnest money.
  E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** Seller represents that as of the Closing Date there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

| To Buyer at: | To Seller at: |
|---|---|
| Stacey Jo Scott | Juanita Denn |
| 4118 TREEHOUSE DR. | 5025 Windmill Prairie |
| San Antonio, Tx 78222 | Seguin, Texas 78155 |
| Telephone: (707) 529-3527 | Telephone: (210) 317-0319 |
| Facsimile: | Facsimile: |
| E-mail: | E-mail: |

Initialed for Identification by Buyer _____ and Seller _____

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035  www.zipform.com

KW-000026

Contract Concerning _____ 1104 Peggy Lane _____ Page 7 of 9   02-13-06
                                    Seguin, Tx  78155
                                   (Address of Property)

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are  (check all applicable boxes):

☐ Third Party Financing Condition Addendum          ☐ Addendum for "Back-Up" Contract

☒ Seller Financing Addendum                         ☐ Environmental Assessment, Threatened or
                                                       Endangered Species and Wetlands
                                                       Addendum

☐ Addendum for Property Subject to                  ☐ Addendum for Coastal Area Property
   Mandatory Membership in an Owners'
   Association

☐ Buyer's Temporary Residential Lease               ☐ Addendum for Property Located Seaward of
                                                       the Gulf Intracoastal Waterway

☐ Addendum for Sale of Other Property by            ☐ Other (list): _____
   Buyer                                             _____
                                                    _____

23. **TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ _____ (Option Fee) within 2 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the effective date of this contract. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☐ will not be credited to the Sales Price at closing. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

24. **CONSULT AN ATTORNEY:** Real estate licensees cannot give legal advice. READ THIS CONTRACT CAREFULLY. If you do not understand the effect of this contract, consult an attorney BEFORE signing.

Buyer's                                             Seller's
Attorney is: _____               Attorney is: _____

_____               _____

Telephone: _____               Telephone: _____

Facsimile: _____               Facsimile: _____

E-mail: _____               E-mail: _____

Initialed for Identification by Buyer _____ and Seller _____      TREC NO. 24-6
(TAR-1604) 2-13-06                                                  Page 7 of 9
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com     D K Brx

KW-000027

| Contract Concerning | 1104 Peggy Lane | | Page 8 of 9    02-13-06 |
|---|---|---|---|
| | Seguin, Tx  78155 | | |
| | (Address of Property) | | |

EXECUTED the _____23rd_____ day of ____APRIL____, ____2006____ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

This contract is subject to Chapter 27 of the Texas Property Code. The provisions of that chapter may affect your right to recover damages arising from the performance of this contract. If you have a complaint concerning a construction defect arising from the performance of this contract and that defect has not been corrected through normal warranty service, you must provide the notice required by Chapter 27 of the Texas Property Code to the contractor by certified mail, return receipt requested, not later than the 60th day before the date you file suit to recover damages in a court of law or initiate arbitration. The notice must refer to Chapter 27 of the Texas Property Code and must describe the construction defect. If requested by the contractor, you must provide the contractor an opportunity to inspect and cure the defect as provided by Section 27.004 of the Texas Property Code.

Buyer's agent

Buyer

Seller  D R Barr

Seller  Juanita Denny

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC NO. 24-6. This form replaces TREC NO. 24-5.

TREC NO. 24-6

(TAR-1604) 2-13-06                                                                        Page 8 of 9

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.ziplorm.com          D R Barr

KW-000028

## BROKER INFORMATION AND RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ of the total sales price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

| Other Broker | License No. | Keller Williams Legacy Group  504694 |
| --- | --- | --- |
| | | Listing Broker  License No. |

represents ☐ Buyer only as Buyer's agent
☐ Seller as Listing Broker's subagent

represents ☒ Seller and Buyer as an intermediary
☐ Seller only as Seller's agent

Listing Associate _____ (210) 482-3200
Larry Furrow  Telephone

Associate _____ Telephone

1102 E. Sonterra
Blvd., Suite 106  (210) 490-4559
Broker's Address _____ Listing Associate's Office Address  Facsimile

San Antonio  Tx  78258
City  State  Zip  City  State  Zip

lfr@swbell.net
Facsimile _____ Email Address

*SAME*
Email Address _____ Selling Associate  Telephone

Selling Associate's Office Address  Facsimile

City  State  Zip

Email Address

## OPTION FEE RECEIPT

Receipt of $ _____ (Option Fee) in the form of _____ is acknowledged.

Seller or Listing Broker _____ Date

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of ☒ Contract and ☒ $1,000 Earnest Money in the form of *CK #1081* is acknowledged.
Escrow Agent: *Alamo Title Company*  Date: 4/25/06
By *Curtis for Frances Wartenstein*
_____ Email Address
109 North River _____ Telephone: (830) 303-3453
Address
Seguin  Tx  76155  Facsimile: 830-303-3908
City  State  Zip

KW-000029